UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------×
SHATEKQUA BROWN, *on behalf of herself and those similarly situated*,

        *Plaintiff*,

  v.

VISITING NURSE SERVICE OF NEW YORK,

        *Defendant*.
------------------------------------------------------------------------×

17 CV 4754

**CLASS ACTION COMPLAINT**

Plaintiff Shatekqua Brown, on behalf of herself and those similarly situated, by her counsel, The Harman Firm, LLP, alleges for her Complaint against Defendant Visiting Nurse Service of New York as follows:

## PRELIMINARY STATEMENT

1. Plaintiff Shatekqua Brown was employed as a Home Health Aide by Defendant Visiting Nurse Service of New York ("VNSNY"), a not-for-profit corporation providing home health care services to individuals in the New York City metropolitan area.

2. Under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, when an employee is scheduled for a shift of 24 hours or more, an employer may exclude up to 8 hours that the employee spends sleeping at the worksite from the time for which the employee is paid.

3. The FLSA mandates that an employer pay an employee for any work-related interruptions to sleep time, ensure that an employee can usually enjoy an uninterrupted night's sleep of at least 5 consecutive hours, and compensate an employee fully for nights where he or she cannot get at least 5 hours of uninterrupted sleep.

4. From the beginning of her employment with VNSNY, Ms. Brown regularly worked 24-hour shifts for VNSNY; Ms. Brown agreed to work for 16 of the scheduled 24 hours and sleep for the remaining 8, and VNSNY would pay Ms. Brown for 16 hours of work.

1

5. Throughout Ms. Brown's employment at VNSNY, VNSNY did not allow Ms. Brown to get the minimum 5 hours of uninterrupted sleep during her scheduled sleeping periods, yet continued to deduct 8 hours representing sleep time from Ms. Brown's wages.

6. As a result, VNSNY failed to properly compensate Ms. Brown, a non-exempt employee, at the overtime premium rate for all hours she worked in excess of 40 in a work week.

7. Plaintiff, on behalf of herself and those similarly situated, seeks damages and costs against Defendant for failing to pay her the overtime premium rate for hours worked in excess of 40 in a work week, in violation of the FLSA.

8. Plaintiff, on behalf of herself and those similarly situated, also seeks damages and costs against Defendant for failing to pay her (i) her regular wages, (ii) the minimum wage, (iii) the overtime premium rate for hours worked in excess of 40 in a work week, and (iv) the spread of hours, in violation of the New York State Labor Law ("NYLL"), N.Y. Lab. Law §§ 1 *et seq.*

9. Plaintiff brings her FLSA claims on behalf of herself and all other similarly situated employees under FLSA § 216(b) ("§ 216(b)").

10. Plaintiff brings her NYLL claims on behalf of herself and all other similarly situated employees pursuant to Rule 23 of the Federal Rules of Civil Procedure ("Rule 23").

11. Plaintiff, individually, also seeks damages and costs against Defendant for retaliating against her for her complaints of sexual harassment by cutting her hours, subjecting her to a hostile work environment, and, ultimately, terminating her employment, in violation of the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code §§ 8-101 *et seq.*

## JURISDICTION AND VENUE

12. Pursuant to 28 U.S.C. § 1331, this Court has original jurisdiction over Plaintiff's claims arising under the FLSA.

2

13. Pursuant to 28 U.S.C. § 1332, this Court has supplemental jurisdiction over Plaintiff's NYLL and NYCHRL claims, as these claims are so related to the claims within such original jurisdiction that they form part of the same case or controversy.

14. Pursuant to 28 U.S.C. § 1391(b), venue is proper in the United States District Court for the Southern District of New York, as a substantial part of the events giving rise to these claims occurred within this District.

## PARTIES

15. Plaintiff, at all times relevant hereto, was and is a resident of New York County in the State of New York.

16. Upon information and belief, at all times relevant hereto, Defendant was and is a not-for-profit corporation organized under the laws of the State of New York with headquarters located at 107 East 70th Street, New York, New York 10021.

## COVERAGE UNDER THE FLSA

17. At all times relevant hereto, Plaintiff was Defendant's "employee" within the meaning of the FLSA.

18. At all times relevant hereto, Defendant was Plaintiff's "employer" within the meaning of the FLSA.

19. Defendant was, and continues to be, an "employer" within the meaning of the FLSA.

20. At all times relevant hereto, Defendant was, and continues to be, an "enterprise engaged in commerce" within the meaning of the FLSA, as it generates revenue by providing home health care services.

21. Upon information and belief, Defendant's annual gross revenue was in excess of $500,000 during the relevant time period.

22. At all times relevant hereto, Plaintiff was "engaged in commerce" and subject to individual coverage of the FLSA.

## COLLECTIVE ACTION ALLEGATIONS

23. Pursuant to 29 U.S.C. § 207, Plaintiff seeks to prosecute her FLSA claim as a collective action on behalf of herself and others who currently work or formerly worked as Home Health Aides for VNSNY (the "Collective Action Members") who worked a 24-hour shift at any time during the 3-year period immediately preceding the filing of the original complaint (the "FLSA Statutory Period").

24. Plaintiff regularly worked 24-hour shifts for Defendant in which she was unable to sleep for at least 5 uninterrupted hours, for which she should have been paid in full, yet Defendant deducted 8 hours from her wages representing sleep time, in violation of the FLSA.

25. As a result, Defendant failed to compensate Plaintiff at the overtime premium rate for all hours worked in excess of 40 in a work week.

26. Defendant subjected Plaintiff and Collective Action Members to the same pay provision(s) in that Defendant failed to properly compensate either Plaintiff or the Collective Action Members for their hours worked.

27. The Collective Action Members are thus owed unpaid overtime wages under the FLSA for the same reasons as Plaintiff.

## CLASS ACTION ALLEGATIONS

28. Pursuant to Rule 23, Plaintiff seeks to prosecute her NYLL claims as class actions on behalf of herself and others who currently work or formerly worked as Home Health Aides

4

for VNSNY (the "Class Members") at any time during the 6-year period immediately preceding the filing of the original complaint (the "NYLL Statutory Period").

29. While the exact number of Class Members is presently unknown, it is estimated that there are at least 50 Class Members.

30. The group of potential Class Members is so numerous as to make it impracticable to bring them all before the Court, for which reason Plaintiff initiates this litigation for all persons similarly situated pursuant to Rule 23.

31. Despite the numerical size of the Class, the identities of Class Members can be ascertained through Defendant's payroll records.

32. Plaintiff and her counsel do not anticipate any difficulties in the management of this action as a class action.

33. Plaintiff is committed to vigorous prosecution of this action, will adequately represent the purported Class Members in this action, and has retained competent counsel experienced in class action litigation.

34. Plaintiff is a Class Member and has no interest antagonistic to or in conflict with other Class Members.

35. This action raises numerous questions of law and fact which are of common and general interest to the Class Members, including:

    a. whether Defendants employed Class Members within the meaning of the NYLL;

    b. what proof of hours worked is sufficient where the employer fails in its duty to maintain adequate time records;

c. whether Defendant failed to pay Class Members their regular wages, in violation of the NYLL;

d. whether Defendant failed to pay Class Members the New York State minimum wage, in violation of the NYLL;

e. the method by which Defendant concluded that Class Members received five hours of uninterrupted sleep;

f. whether Defendant failed to pay Class Members overtime compensation for hours worked in excess of 40 hours in a work week, in violation of the NYLL;

g. whether Defendant failed to pay Class Members the spread of hours for shifts lasting ten or more hours, in violation of the NYLL;

h. whether Defendant's violations of the NYLL were willful as that term is used within the context of the NYLL; and

i. whether Defendant is liable for all damages claimed hereunder, including, but not limited to, compensatory, punitive and statutory damages, interest, costs and disbursements and attorneys' fees.

36. The claims or defenses of the represented party are typical of the claims or defenses of the Class Members.

37. Plaintiff has the same interests as other Class Members in prosecuting her claims against Defendant.

38. Plaintiff and all Class Members sustained damages as a result of Defendant's wrongful conduct.

39. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

6

40. Furthermore, due to the expense and burden of individual litigation, it would be extraordinarily difficult for Class Members to redress the wrongs done to them individually.

41. Plaintiff and The Harman Firm, LLP, will fairly and adequately assert and protect the interests of the Class Members.

## STATEMENT OF FACTS

42. In or around September 2004, VNSNY hired Ms. Brown as a Home Health Aide working in VNSNY's Partners in Care division, earning $6.70 per hour.

43. During her employment at VNSNY, Ms. Brown received raises as follows:

   a. October 2004: $7.20 per hour;

   b. June 2005: $7.50 per hour;

   c. June 2007: $7.75 per hour;

   d. July 2007: $8.00 per hour;

   e. September 2008: $8.50 per hour;

   f. January 2010: $9.00 per hour;

   g. October 2010: $9.25 per hour;

   h. February 2012: $9.50 per hour; and

   i. November 2013: $10.75 per hour.

44. As a Home Health Aide, Ms. Brown provided private home care for VNSNY's clients on an on-call basis.

45. As an on-call Home Health Aide, Ms. Brown's hours varied considerably from week to week, depending on VNSNY's scheduling needs.

46. Throughout her 12-year tenure at VNSNY, Ms. Brown was an exemplary, reliable employee who never received any discipline, warnings, write-ups, or the like.

47. Ms. Brown was eligible for overtime pay throughout her employment at VNSNY.

## I. Wage-and-Hour Claims

48. Under the FLSA, when an employee is scheduled for a shift of 24 hours or more, an employer may exclude up to 8 hours that the employee spends sleeping at the worksite from the time for which the employee must be paid.

49. In order to legitimately exclude time spent sleeping from an employee's wages, the employer must:

   a. pay the employee for any interruptions to sleep time by a call to duty;

   b. ensure that the employee can usually enjoy an uninterrupted night's sleep of at least 5 consecutive hours;

   c. compensate the employee in full for the entire night if the employee is interrupted such that he or she cannot get reasonable periods of sleep totaling at least 5 hours;

   d. provide adequate sleeping facilities for the employee;

   e. have an express or implied agreement with the employee to exclude sleep time; and

   f. exclude no more than 8 hours in a fixed period as sleep time in each 24-hour shift.

50. From the beginning of her employment with VNSNY, Ms. Brown regularly worked 24-hour shifts for VNSNY.

51. During periods in which Ms. Brown worked regular 24-hour shifts, she typically worked 3 to 4 such shifts in a given work week.

52. Ms. Brown and VNSNY had an agreement according to which Ms. Brown would work for 16 of the scheduled 24 hours and sleep for the remaining 8 hours.

53. VNSNY would then deduct these 8 hours, representing Ms. Brown's time spent sleeping, from Ms. Brown's wages.

54. However, throughout Ms. Brown's employment, VNSNY did not allow Ms. Brown to get uninterrupted sleep during the scheduled sleeping period.

55. VNSNY required Ms. Brown to call VNSNY every hour, on the hour, during 24-hour shifts—including during her designated sleeping period—to confirm that she was awake.

56. As a result, Ms. Brown was never able to sleep for even the FLSA–mandated minimum of 5 uninterrupted hours, much less the 8 hours which were deducted from her pay.

57. Under the FLSA, Ms. Brown should have been paid in full for the entire night, as VNSNY explicitly prevented her from sleeping for the mandatory minimum of 5 hours during her 24-hour shifts.

58. Yet VNSNY continued to deduct 8 hours representing sleep time from Ms. Brown's wages, failing to compensate Ms. Brown whatsoever for these hours worked.

59. As a result, during weeks in which Ms. Brown worked overnight shifts and also worked over 40 hours in a work week, VNSNY failed to pay her at the overtime premium rate for all hours worked in excess of 40 per week.

60. Additionally, as a result of VNSNY's failure to compensate Ms. Brown for these hours, Ms. Brown's effective hourly rate during multiple weeks of her employment was less than the applicable New York State minimum wage.

61. For example, from August 2014 through October 2014, Ms. Brown regularly worked 3 to 4 overnight shifts per week, resulting in a work week of 72 to 96 hours.

9

62. Ms. Brown worked at least 72 hours per work week in each week of her employment from August 2014 through October 2014.

63. Throughout that time period, Ms. Brown's regular pay rate was $10.75 per hour.

64. From December 31, 2013, through December 31, 2014, the New York State minimum wage was $8.00 per hour.

65. As a result of VNSNY's failure to compensate Ms. Brown for all hours worked, her effective hourly rate during this time period fell below the New York State minimum wage.

## II.   Sexual Harassment and Retaliation Claims

66. On or about October 14, 2015, Ms. Brown was working at the Bailey House, a client of Partners in Care located at 180 Christopher Street, New York, New York 10014.

67. Ms. Brown was doing laundry in the basement with another Home Health Aide, Maurice Poole, who was assigned to the same job.

68. After Mr. Poole left the basement, Ms. Brown finished the laundry and exited the basement, as well.

69. As Ms. Brown entered the corridor to the stairwell leading out of the basement, she found Mr. Poole waiting for her, exposing himself to her and openly masturbating.

70. Shocked and disturbed, Ms. Brown screamed and rushed upstairs.

71. Ms. Brown informed Raymond Young, a Bailey House Security Guard; a male Bailey House receptionist; and a female coordinator at the Bailey House front desk, known to Ms. Brown only as "Jeanette," of what had transpired and complained about Mr. Poole's conduct.

72. Mr. Young accompanied Ms. Brown to the police station, where Ms. Brown made a police report regarding the incident with Mr. Poole.

73. Ms. Brown gave the police officer VNSNY's phone number to contact VNSNY.

74. Ms. Brown returned to Bailey House to finish her shift.

75. Ms. Brown did not see Mr. Poole at Bailey House.

76. Ms. Brown later learned that, due to Mr. Poole's conduct, Bailey House had banned Mr. Poole from working at Bailey House.

77. However, since Mr. Poole was a VNSNY employee, not a Bailey House employee, Bailey House was unable to terminate or otherwise discipline Mr. Poole.

78. Upon information and belief, both Bailey House and the police contacted VNSNY to inform the company about the incident.

79. After Ms. Brown's complaint of sexual harassment, VNSNY began to retaliate against her.

80. On or about October 19, 2015, Ms. Brown went to VNSNY's offices located at 1250 Broadway, 9th Floor, New York, New York 10001.

81. After being buzzed in by the receptionist, Ms. Brown signed in and told the VNSNY receptionist that she wanted to make a complaint about a VNSNY employee.

82. The receptionist directed Ms. Brown to go to the payroll department window.

83. Ms. Brown went to the payroll department window, where she reiterated that she wanted to make a complaint about a VNSNY employee.

84. The payroll coordinator invited Ms. Brown to speak with her in the payroll department.

85. Ms. Brown did so and explained the October 14 incident in detail, including that Mr. Poole had exposed himself to her and masturbated in front of her and that she had filed a police report.

86. After explaining the incident, Ms. Brown asked what VNSNY was doing to correct the situation.

87. Rather than answer Ms. Brown's question, however, VNSNY's payroll coordinator reprimanded Ms. Brown for inquiring about Mr. Poole, claiming that it somehow constituted "harassment" on Ms. Brown's part "to even be asking all these questions about him."

88. The payroll coordinator also instructed Ms. Brown not to contact VNSNY's Human Resources Department regarding Mr. Poole, telling Ms. Brown that VNSNY would consider such conduct "harassment" and that, if Ms. Brown ignored this prohibition, she could be "fired or further."

89. Following this conversation, VNSNY stopped scheduling Ms. Brown for work.

90. In and around November 2015, Ms. Brown received a warning letter from VNSNY, stating that, as she had "not reported for work," she was at risk of being terminated.

91. This was entirely untrue; Ms. Brown had not failed to report for work on any occasion throughout her employment at VNSNY.

92. In reality, VNSNY had not scheduled Ms. Brown for work since she reported the incident with Mr. Poole.

93. Far from failing to report for work, Ms. Brown had been repeatedly calling VNSNY to request job assignments—including contacting Cynthia Nita, her union representative, and Jason Connelly, VNSNY's Executive President—to no avail.

94. Mr. Connelly simply told Ms. Brown, without explanation, that she should "look for another job."

95. VNSNY's placement director told Ms. Brown that "nothing was available."

12

96. Yet Ms. Brown knew that VNSNY had continued to hire and schedule new Home Health Aides—including Ms. Brown's own sister—during the time period in which Ms. Brown had not been scheduled for work.

97. Ms. Brown responded to VNSNY's November 2015 letter, informing VNSNY that the letter's contents were entirely false and again requesting that she be scheduled for work.

98. However, VNSNY continued to ignore Ms. Brown's attempts to contact VNSNY for two months.

99. In and around January 2016, VNSNY sent Ms. Brown a termination letter, stating that she was being terminated because she had not called in for work and had taken a "leave of absence."

100. VNSNY sent Ms. Brown another termination letter in February 10, 2016, giving the same reasons for her termination.

101. Ms. Brown, confused by VNSNY's two letters, attempted to call VNSNY for clarification, but VNSNY ignored all of her communications.

102. In reality, VNSNY terminated Ms. Brown's employment in retaliation for her complaints of sexual harassment.

## CAUSES OF ACTION
### FIRST CAUSE OF ACTION
**Unpaid Overtime in Violation of the FLSA**

103. Plaintiff, on behalf of herself and those similarly situated, hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 102 with the same force as though separately alleged herein.

104. At all times relevant to this action, Plaintiff was employed by Defendant within the meaning of the FLSA.

105. The FLSA mandates that employers compensate employees at one-and-a-half times their normal hourly rate for all hours worked over 40 in a work week.

106. Defendant failed to pay Plaintiff at all for hours worked in excess of 40 in a work week, much less at the overtime premium rate.

107. As such, Defendant violated the FLSA's overtime requirement by not paying Plaintiff at the overtime premium rate for hours worked in excess of 40 in a work week.

108. Due to Defendant's FLSA violations, Plaintiff is entitled to recover from Defendant her back pay at the overtime premium rate, liquidated damages, punitive damages, and reasonable attorneys' fees, costs, and interest related to the action.

### SECOND CAUSE OF ACTION
**Failure to Pay Wages in Violation of the NYLL**

109. Plaintiff, on behalf of herself and those similarly situated, hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 108 with the same force as though separately alleged herein.

110. At all times relevant to this action, Plaintiff was employed by Defendant within the meaning of the NYLL.

111. NYLL § 191 mandates that (i) employers pay clerical and other workers their wages earned in accordance with the agreed terms of employment, but not less frequently than semi-monthly, on regular pay days designated in advance by the employer, and (ii) if an employee's employment is terminated, the employer shall pay the employee's wages not later than the regular pay day for the pay period during which the termination occurred.

112. Defendant has failed to pay Plaintiff whatsoever for hours worked for Defendant.

113. Defendant knowingly and willfully violated Plaintiff's rights under the NYLL by failing to pay Plaintiff for her hours worked.

114. Due to Defendant's NYLL violations, Plaintiff is entitled to recover from Defendant her unpaid compensation, liquidated damages, punitive damages, reasonable attorneys' fees, costs, and interest related to the action.

### THIRD CAUSE OF ACTION
### Unpaid Minimum Wage in Violation of the NYLL

115. Plaintiff, on behalf of herself and those similarly situated, hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 114 with the same force as though separately alleged herein.

116. At all times relevant to this action, Plaintiff was employed by Defendant within the meaning of the NYLL.

117. The NYLL mandates that employers pay each of their employees for each hour worked at an hourly rate not less than the New York State minimum wage.

118. Defendant's wages to Plaintiff resulted in an hourly rate below the applicable mandated New York State minimum wage.

119. Defendant violated Plaintiff's rights under the NYLL by failing to pay her the minimum wage for hours worked.

120. Due to Defendant's NYLL violations, Plaintiff is entitled to recover from Defendant her unpaid compensation, liquidated damages, interest and reasonable attorneys' fees, costs, and interest related to the action.

### FOURTH CAUSE OF ACTION
### Unpaid Overtime in Violation of the NYLL

121. Plaintiff, on behalf of herself and those similarly situated, hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 120 with the same force as though separately alleged herein.

122. At all relevant times, Plaintiff was employed by Defendant within the meaning of the NYLL.

123. The NYLL mandates that employers compensate employees at one-and-a-half times their normal hourly rate for all hours worked over 40 in a work week.

124. Defendant has failed to pay Plaintiff whatsoever for hours worked for Defendant. As such, Defendant has failed to pay Plaintiff at the overtime premium rate for hours worked for Defendant in excess of 40 in a work week.

125. Defendant willfully and intentionally violated the NYLL's overtime requirement by not paying Plaintiff at the overtime premium rate for hours worked in excess of 40 in a work week.

126. Due to Defendant's NYLL violations, Plaintiff is entitled to recover from Defendant her back pay at the overtime premium rate, liquidated damages, punitive damages, reasonable attorneys' fees, costs, and interest related to the action.

## FIFTH CAUSE OF ACTION
**Unpaid Spread of Hours in Violation of the NYLL**

127. Plaintiff, on behalf of herself and those similarly situated, hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 126 with the same force as though separately alleged herein.

128. At all relevant times, Plaintiff was employed by Defendant within the meaning of the NYLL.

129. The NYLL requires an employer to pay an employee one additional hour at the minimum wage for any day during which the employee worked ten or more hours.

130. Plaintiff regularly worked ten or more hours in a day during her employment with Defendant, but was not paid one additional hour at the minimum wage.

131.    Due to Defendant's NYLL violations, Plaintiff is entitled to recover from Defendant her unpaid compensation, liquidated damages, punitive damages, reasonable attorneys' fees, costs, and interest related to the action.

### SIXTH CAUSE OF ACTION
### Retaliation in Violation of the NYCHRL

132.    Plaintiff, individually, hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 131 with the same force as though separately alleged herein.

133.    The NYCHRL prohibits an employer from retaliating against an employee for engaging in protected activity under the NYCHRL.

134.    Plaintiff engaged in protected activity under the NYCHRL when she properly complained to Defendant about being sexually harassed by Defendant's employee.

135.    Defendant retaliated against Plaintiff for her complaints by refusing to schedule her for work and, ultimately, terminating her employment.

136.    As such, Defendant has violated the NYCHRL.

137.    As a direct and proximate consequence of Defendant's retaliation, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

## **REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests the following relief:

A. For the first cause of action, damages to be determined at trial;

B. For the second cause of action, damages to be determined at trial;

C. For the third cause of action, damages to be determined at trial;

D. For the fourth cause of action, damages to be determined at trial;

E. For the fifth cause of action, damages to be determined at trial;

F. For the sixth cause of action, damages to be determined at trial; and

G. For such other and further relief as the Court deems just and proper.

Dated: New York, New York
June 22, 2017

By: s/ Walker G. Harman, Jr.
Walker G. Harman, Jr. [WH-8044]
Edgar M. Rivera [ER-1378]
THE HARMAN FIRM, LLP
220 Fifth Avenue, Suite 900
New York, NY 10001
(212) 425-2600
wharman@theharmanfirm.com
erivera@theharmanfirm.com

*Attorneys for Plaintiff*